IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GEORGE O. HARRISON, JR.,**

    **Plaintiff,**

v.                                               Civil Action No. 3:19cv799

**WELLS FARGO BANK, N.A.,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Wells Fargo Bank's ("Wells Fargo") Motion for Judgment on the Pleadings or, in the alternative, Motion for Summary Judgment (the "Motion for Judgment"). (ECF No. 18.) *Pro se* Plaintiff George O. Harrison, Jr. responded, (ECF No. 20), and Wells Fargo replied. (ECF No. 21.) Harrison also filed a Motion to Strike (the "Motion to Strike"), (ECF No. 24), to which Wells Fargo responded, (ECF No. 25) Accordingly, this matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant in part and deny in part the Motion for Judgment and deny the Motion to Strike.

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). Harrison alleges violations of five federal statutes: (1) the Americans with Disabilities Act, 42 U.S.C. §12112 ("ADA"); (2) the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"); (3) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"); (4) the Fair Labor Standards Act, 29 U.S.C. § 203 ("FLSA"); and, (5) 42 U.S.C. § 1983, meaning his action arises under the laws of the United States.

## I. Factual and Procedural Background

Harrison brings this Complaint pursuant to Title VII, the ADEA, and the ADA, alleging that Wells Fargo discriminated against him due to his race, age, and disability when it rescinded an offer of employment.

### A.   Factual Allegations

Harrison is a sixty-six-year-old "African American" male with a "visual impairment." (Compl. ¶¶ 3,7, ECF No. 1.) Harrison states that his visual impairment constitutes a "recognized disability under the definition of that term in 29 C.F.R. ¶ 1630.2(g)." (*Id.* ¶ 3.)

On or about March 25, 2019, Harrison applied for a phone banker position with Wells Fargo that he "was fully qualified for . . . in background and training," (*id.* ¶ 7), and Wells Fargo extended Harrison an "offer of employment," (*id.* ¶¶ 9–10). However, at some point after extending Harrison an offer of employment, Wells Fargo made the "decision not to employ [him]." (*Id.* ¶ 8.) Harrison states that Wells Fargo made the decision not to hire him "because of . . . discrimination of Wells Fargo on the basis of disability, race and age." (*Id.* ¶ 5.)

Harrison avers, upon information and belief, that Wells Fargo received a "consumer background report" that "provides information [about Harrison] that predates the offer of employment by more than [ten] years and reveals nothing job-related or consistent with business necessity." (*Id.* ¶ 9.) Harrison states that "[a]t no time prior to making its decision did Wells Fargo communicate with [him] concerning the consumer background report." (*Id.* ¶ 10.)

Finally, Harrison states that "[a] copy of the Right to Sue letter received by Harrison dated August 5, 2019 is attached." (*Id.* ¶ 13.) However, no Right to Sue letter, or any other document from the EEOC, is attached to the Complaint.

2

B. **Procedural Background**

On October 28, 2019, Harrison, appearing *pro se*, filed his Complaint against Wells Fargo.[2] (Compl., ECF No. 1.) On December 23, 2019, Wells Fargo filed its Answer, admitting that Harrison applied for employment with Wells Fargo, denying the asserted claims, and asserting seven affirmative defenses. (Answer, ECF No. 5.) Shortly thereafter, Harrison filed a Motion to Compel Discovery, (ECF No. 11), which this Court denied without prejudice stating that the "Court and the Parties will have the opportunity to discuss scheduling and discovery deadlines for this matter at the Initial Pretrial Conference" then scheduled for June 25, 2020. (Apr. 28, 2020 Order, ECF No. 17.) On May 22, 2020, despite the upcoming Initial Pretrial Conference, Wells Fargo filed the instant Motion for Judgment. (ECF No. 18.) Harrison responded, and Wells Fargo replied. Due to the pending Motion for Judgment, the Court cancelled the Initial Pretrial Conference. (ECF No. 23.)

Reading Harrison's Complaint broadly, he brings nine causes of action against Wells Fargo, alleging that:

| | |
|---|---|
| **Count I:** | Wells Fargo violated the ADA by failing to hire Harrison on the basis of his disability; |
| **Count II:** | Wells Fargo violated the ADEA by failing to hire Harrison on the basis of his age; |
| **Count III:** | Wells Fargo violated Title VII by failing to hire Harrison on the basis of his race (collectively with Counts I and II, the "Failure to Hire Claims"); |
| **Count IV:** | Wells Fargo violated the ADA by engaging in unlawful employment practices that have a disparate impact on individuals with disabilities; |
| **Count V:** | Wells Fargo violated the ADEA by engaging in unlawful employment practices that have a disparate impact on individuals over the age of forty; |

---

[2] The Court notes that Harrison filed a substantially similar complaint against another financial institution in this Court. (*See Harrison v. Capital One Services, LLC*, 3:19-cv-00854-JAG.)

3

  **Count VI:**  Wells Fargo violated Title VII by engaging in unlawful employment practices that have a disparate impact on individuals on the basis of race (collectively with Counts IV and V, the "Disparate Impact Claims");

  **Count VII:**  Wells Fargo violated 42 U.S.C § 1983 through the ADA, ADEA, and Title VII;

  **Count VIII:**  Wells Fargo violated the FLSA by failing to provide Harrison with unpaid minimum wage and overtime compensation and by retaliation; and,

  **Count IX:**  Wells Fargo retaliated against Harrison for invoking his ADA rights.

As relief, Harrison seeks an injunction against Wells Fargo from discriminating on the basis of disability, race, and age when making hiring and other employment decisions; a declaratory judgment that Wells Fargo violated Harrison's rights under the ADA, ADEA, and Title VII; $500,000.00 in compensatory damages; $150,000.00 in punitive damages, and attorney's fees and costs. (Compl. 4.)

In the Memorandum in Support of the Motion for Judgment, Wells Fargo argues that Harrison was precluded from employment at Wells Fargo by 12 U.S.C. § 1829(a)(1), more commonly known as "Section 19," which bars from employment any person who has been convicted of any criminal offense involving dishonesty, breach of trust, or money laundering, absent the Federal Deposit Insurance Corporation's (FDIC) prior written consent. (Mem. Supp. Mot. J. 5–6, ECF No. 19.) Because Harrison's background check revealed that he had multiple convictions for dishonesty and breach of trust, Wells Fargo contends that Harrison cannot state a cognizable failure to hire claim. (*Id.*) Wells Fargo also challenges the sufficiency of Harrison's other claims. (*Id.*)

In the Motion to Strike, Harrison claims that he filed his Response to the Motion for Judgment on June 3, 2020, although the Clerk's Office entered the response on the docket on June 4, 2020. (Mot. Strike 1, ECF No. 24.) On June 10, 2020, Wells Fargo submitted its Reply brief in support of the Motion for Judgment. (Reply, ECF No. 21.) Harrison argues that Wells

4

Fargo's Reply brief is untimely as it was submitted the seventh day after June 3, 2020, and not the sixth, as required by the Local Rules for the Eastern District of Virginia. (Mot. Strike 1.)

## II. Standards of Review

### A. Motion for Judgment on the Pleadings: Rule 12(c)

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "A Rule 12(c) motion for judgment on the pleadings therefore is also analyzed for compliance with the Supreme Court's holdings in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 425 F. Supp. 3d 601, 607 (E.D. Va. 2019) (citations omitted).

"It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2019) (citing cases). Similar to a Rule 12(b)(6) motion, the Court must view all "the inferences to be drawn [from the facts] in the light most favorable to the nonmoving party." *Id.* "To survive a motion for judgment on the pleadings, a pleading need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *United States v. Sum of Three*

5

*Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 115 (D.D.C. 2015) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### B. *Pro Se* Pleadings

Because Harrison proceeds *pro se*, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Fed. R. Civ. P. 8 for "all civil actions"). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Cir. Ct. of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014) (internal quotation marks and citations omitted).

### III. Analysis

Wells Fargo brings the instant Motion for Judgment, which this Court will construe as a Motion for Judgment on the Pleadings.[3] The Court first addresses Harrison's Motion to Strike

---

[3] At this stage in the proceeding, the Court finds summary judgment inappropriate because Harrison "has not had the opportunity to discover information that is essential to his opposition." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)). When parties have not engaged in discovery, and "when fact-intensive issues, such as intent, are involved," summary judgment may be premature. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Indeed, summary judgment is often inappropriate where discovery has not yet taken place and "the relevant facts are exclusively in

before turning to Wells Fargo's affirmative defense, finding that it would be premature, on this record, to dismiss Harrison's Failure to Hire Claims as a matter of law. The Court next turns to the substance of Harrison's claims.

### A. The Court Will Deny the Motion to Strike Because Wells Fargo Timely Filed its Reply

On June 16, 2020, Harrison filed the Motion to Strike, arguing that Wells Fargo did not timely file its Reply because it was filed on June 10, 2020, and not June 9, 2020. (Mot. Strike 1.) The Court will deny the Motion to Strike.

Local Rule for the Eastern District of Virginia 7(F)(1) states that "the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief." Loc. Civ. R. 7(F)(1); *see also* Fed. R. Civ. P. 6 ("The following rules apply in computing any time period specified in these rules, *in any local rule or court order*, or in any statute that does not specify a method of computing time. (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time: (A) *exclude the day of the event that triggers the period* . . . .") (emphasis added).

Here, Harrison filed his Response to the Motion for Judgment on June 3, 2020. But Wells Fargo did not receive service of his Response until June 4, 2020, when the Clerk's Office entered his Response on the docket and provided electronic service to Wells Fargo. (*See* ECF

---

the control of the opposing party." *Id.* at 246–47. "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Id.* at 244 (internal citations and quotations omitted).

Harrison, a *pro se* plaintiff, has not yet been given the opportunity to conduct discovery and access information relevant to his claims against Wells Fargo—information that lies "exclusively in the control of [Wells Fargo]." *Id.* at 246–47. While Harrison did not file a "Rule 56(f) affidavit stating" his need for additional discovery, *id.*, the Court, considering his *pro se* status, declines to construe Wells Fargo's submission as a motion for summary judgment and will instead solely consider it as a Motion for Judgment on the Pleadings.

7

No. 20.) Accordingly, because the Local Rules contemplates a reply six days "after the *service of the opposing party's response*," (Local Rule 7(f)(1)), the deadline for Wells Fargo to file its Reply brief was June 10, 2020, six calendar days after the Clerk entered and served Harrison's response brief on June 4, 2020. Wells Fargo therefore timely filed its Reply on June 10, 2020. Because Wells Fargo timely filed, the Court will deny the Motion to Strike. (ECF No. 24.)

### B. Counts I, II, and III: The Failure to Hire Claims

The Court will deny the Motion for Judgment as to Harrison's Failure to Hire Claims. The Court first addresses Wells Fargo's affirmative defense to Harrison's Failure to Hire Claims, finding that Wells Fargo prematurely raises a non-discriminatory reason for its employment decision. The Court next determines that Harrison plausibly pleads that Wells Fargo refused to hire him on account of his race, age, and disability.

#### 1. Wells Fargo Prematurely Raises an Affirmative Defense by Asserting a Non-Discriminatory Reason for Not Hiring Harrison

In its Motion for Judgment, Wells Fargo contends that Harrison cannot state a plausible failure to hire claim because it withdrew Harrison's job offer due to several previous convictions for crimes involving dishonesty. (Mem. Supp. Mot. J. 5–6.) Specifically, Wells Fargo states that under the Federal Deposit Insurance Act, "any person who has been convicted of any criminal offense involving dishonesty, breach of trust, or money laundering is barred, without the FDIC's prior written consent, from employment by an institution insured by the FDIC." (*Id.* 5 (citing 12 U.S.C. § 1829(a)(1)).) Wells Fargo submits that Harrison's background check, as referenced by Harrison in his Complaint, shows that he "pled guilty to nine crimes that involve dishonesty," all involving worthless checks or larceny, between 1976 and 1987. (*Id.* 6.) According to Wells Fargo, because federal law barred Harrison from employment at Wells Fargo, the Court must dismiss Harrison's Failure to Hire Claims. (*Id.*)

8

Wells Fargo's argument mistakes an employer's affirmative defense to a discrimination charge with grounds for dismissing a complaint. While an employer may raise a "legitimate, non-discriminatory reason for its adverse employment decision" as a defense to a charge of discrimination, *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (referring to ADEA), that defense may only be invoked under the "burden-shifting" framework at the summary judgment stage, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). At this stage, without the aid of discovery, it is too early to assess whether Wells Fargo's proffered reasons for revoking Harrison's employment offer were "legitimate" or a "pretext for . . . discrimination" on the basis of race, age, or disability. *Laber*, 438 F.3d at 430. The only question properly before the Court is whether Harrison pleads the elements of a failure to hire claim under Title VII, the ADA, and the ADEA. For the reasons set forth below, the Court finds that he does.

  **2.**  **Harrison Plausibly Pleads the Elements of a Failure to Hire Claim Under Title VII, the ADA, and the ADEA**

Harrison states a plausible claim that Wells Fargo discriminated against him on the basis of his race, age, and disability by failing to hire him.

    **a.**  **Legal Standard: Failure to Hire under Title VII, the ADA, and the ADEA**

Because Harrison has not proffered direct evidence of discrimination on the basis of race, age, or disability, the Court must analyze his failure to hire claim under the burden-shifting framework of *McDonnell Douglas*. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).[4]

---

[4] As the Fourth Circuit recognized in *Anderson*:

> [e]mployers are, on the whole, too sophisticated to profess their prejudices on paper or before witnesses. The Supreme Court in *McDonnell Douglas*, recognizing the necessity in most instances of reliance on circumstantial evidence, laid down rules

9

To state a failure to hire claim under Title VII, a plaintiff must show "that (1) [he or] she is a member of a protected group, (2) there was a specific position for which [he or] she applied, (3) [he or] she was qualified for that position, and (4) [the defendant] rejected [his or] her application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).[5] The pleading requirements for a failure to hire claim under the ADA and the ADEA closely mirror Title VII, although the first prong differs. To state an ADA claim, the plaintiff must show that "he [or she] is within the ADA's protected class," *Wilson v. Dollar Gen. Corp.*, 122 F. Supp. 3d 460, 463 (W.D. Va. 2015), while under the ADEA, the plaintiff must demonstrate that "he [or she] was at least 40 years old" at the time of the employment action, *Laber*, 438 F.3d at 430.

Under each statute, a "plaintiff need not plead facts that constitute a *prima facie* case, [but] a plaintiff still bears the burden of alleging facts sufficient to state all the elements of her claim." *Turner v. Richmond Pub. Schs.*, No. 3:16cv256, 2017 WL 1179162, at *12 (E.D. Va. Mar. 28, 2017) (internal quotation marks and citations omitted); *see also Woods v. City of*

---

of proof under which direct evidence of discriminatory intent is not necessary to the making of a *prima facie* case.

*Anderson*, 406 F.3d at 283 n.5 (internal citations omitted).

[5] Here, for clarity, the Court outlines separate standards for failure to hire claims under Title VII, the ADA, and the ADEA. The Court, however, notes that a number of courts in the Fourth Circuit have applied Title VII's proof scheme to claims under both the ADA and ADEA. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases"); *Gurganus v. Beneficial N.C., Inc.*, 25 F. App'x 110, 111 (4th Cir. 2001) (applying Title VII proof scheme to ADEA failure to promote claim); *Burgoon v. Potter*, 369 F. Supp. 2d 789, 792 n.1 (E.D. Va. 2005) ("[T]he standards relating to the burdens and order of proof in Title VII cases also apply in ADEA cases.").

*Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (stating that a plaintiff seeking to raise an employment discrimination claim "need not plead facts sufficient to establish a *prima facie* case of race-based discrimination to survive a motion to dismiss, but . . . the more stringent pleading standard established in *Iqbal* and *Twombly* applies").

        **b.**      **Harrison Pleads a Plausible Failure to Hire Claim on the Basis of Race, Age, and Disability**

Here, liberally reading Harrison's Complaint, he states all four elements of a failure to hire claim under Title VII, the ADA, and ADEA.

Turning to the first prong, Harrison alleges membership in a protected group under each statute. As to Title VII, Harrison alleges that he is "African American," (Compl. ¶ 3), and thus "a member of a protected group." *Williams*, 370 F.3d at 430. Regarding the ADA, Harrison claims that he has a "visual impairment" that constitutes a "recognized disability under the definition of that term in 29 C.F.R. ¶ 1630.2(g)."[6] (Compl. ¶ 3); *Wilson*, 122 F. Supp. 3d at 463. Finally, as to his ADEA claims, Harrison states that he is "66 years of age," (Compl. ¶ 7), thus qualifying as a member of the ADEA's protected class. *Laber*, 438 F.3d at 430.

As to the next two elements, that there was a "specific position for which [he] applied" and that he was "qualified for that position," *Williams*, 370 F.3d at 430, Harrison plausibly

---

[6] The EEOC issued regulations interpreting the ADA and defining "disability" as,

(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(2) A record of such an impairment; or
(3) Being regarded as having such an impairment . . .

29 CFR § 1630.2(g). Harrison does not specify under which of the above category of disabilities his impairment falls. Despite this lack of detail, the Court, reading Harrison's pleadings liberally—and noting that Wells Fargo does not contest whether Harrison has a disability as defined by the ADA—finds that he has alleged facts that suffice, at this procedural posture, to show his "visual impairment" constitutes a disability under the ADA. (Compl. ¶ 3.)

11

pleads that he applied for an open position of "Phone Banker I" and that he "was fully qualified for it in background and training," (Compl. ¶ 7). Wells Fargo's initial "offer of employment" to Harrison demonstrates his qualifications for the position. (*Id.* ¶ 9.) This satisfies the second and third prongs as needed to bring a discrimination claim under each statute.

Finally, as to the fourth prong, Harrison plausibly pleads that that he was rejected under circumstances giving rise to an inference of discrimination because the position for which he applied "was then and has subsequently been available." *See McDonnell Douglas*, 411 U.S. at 802 (finding plaintiff pled *prima facie* case of discriminatory circumstances under Title VII when "position remained open and the employer continued to seek applicants from persons of complainant's qualifications").

Drawing all reasonable inferences in favor of Harrison, the Complaint plausibly states a cognizable claim for failure to hire under Title VII, the ADA, and the ADEA against Wells Fargo. The Court will deny the Motion for Judgment as to Counts I, II, and III.

### C. Counts IV, V, and VI: The Disparate Impact Claims

The Court will grant the Motion for Judgment as to Harrison's Disparate Impact Claims. In Counts IV, V, and VI, Harrison alleges that Wells Fargo's hiring practices have a disparate impact on protected racial minorities, those with disabilities, and those over the age of forty. (Compl. ¶ 12.) Each of these claims falter because Harrison fails to identify a specific, facially neutral employer practice that has a discriminatory impact on those groups.

#### 1. Legal Standard: Disparate Impact Claims Under Title VII, the ADA, and the ADEA

"Disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and

cannot be justified by a business necessity.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quoting *Teamsters v. United States*, 431 U.S. 324, 335–36 n.15 (1977)).

Under Title VII, "[a]n unlawful employment practice based on disparate impact is established . . . only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race." 42 U.S.C. § 2000e-2(k)(1)(A)(i). "To establish a *prima facie* case of disparate impact discrimination under Title VII, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020) (quoting *Anderson*, 406 F.3d at 265). Plaintiff must identify a "specific employment practice that is being challenged." *Anderson,* 406 F.3d at 266. Disparate-impact claims do not require evidence of the employer's subjective intent to discriminate, only that the employment practice "fall[s] more harshly on one group than another." *Raytheon Co.*, 540 U.S. at 52.

For an applicant to state a claim of disparate impact under the ADA, "a plaintiff must (i) identify the challenged employment practice or policy, (ii) demonstrate that the practice or policy had an adverse impact on the plaintiff with a disability, and (iii) demonstrate a causal relationship between the identified practice and the disparate impact." *Williams v. ABM Parking Servs., Inc.*, 296 F. Supp. 3d 779, 789 (E.D. Va. 2017) (citation omitted); *see also* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures[ or] the hiring . . . of employees . . . ."). As with Title VII, an ADA plaintiff must "allege[] how th[e] [challenged policy] impacts one group of individuals more harshly than another." *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 609 (E.D. Va. 2019) (finding a job applicant failed to state a disparate-impact claim under the ADA). Finally, under the ADEA, the Supreme Court has likewise stated that a plaintiff "is

13

responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (citations and quotations omitted); *see also* 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age . . . .").

        2.      **Harrison Does Not State a Disparate Impact Claim Because He Does Not Identify a Specific Wells Fargo Practice or Policy that Causes a <u>Disparate Impact on Any Protected Group</u>**

Harrison does not state a claim for disparate impact because he does not identify a specific practice that impermissibly discriminates on the basis of race, disability, or age.

In his Complaint, Harrison generally alleges that "Wells Fargo Bank maintains policies, programs and classifications that impermissibly discriminate against persons with disabilities, race, and because of such person's age being more than 40 years." (Compl. ¶ 12.) However, Harrison's sole reference to "policies, programs and classifications" does not sufficiently identify the "specific employment practice that is being challenged." *Anderson,* 406 F.3d at 266; *see also Sturgill*, 391 F. Supp. 3d at 609 (plaintiff must allege a facially neutral policy that "impacts one group of individuals more harshly than another"). Even liberally construing Harrison's Complaint as challenging Wells Fargo's policy of performing criminal background checks, Harrison does not allege "*how* th[e] [background check process] impacts one group of individuals more harshly than another." *Sturgill*, 391 F. Supp. 3d at 609 (emphasis added). Without identifying a specific policy that Wells Fargo employs or how it disproportionately affects specified groups, Harrison cannot state a claim for disparate impact under Title VII, the ADA, or ADEA. *See Washington v. First Transit, Inc.*, No. 17-3747, 2018 WL 3642602, at *4 (D. Md. Aug. 1, 2018) (dismissing a disparate-impact claim under Title VII when a job applicant

14

failed to allege how the challenged policy disproportionately affects job applicants of certain specified groups); *Sturgill*, 391 F. Supp. 3d at 609 (dismissing a disparate-impact claim under the ADA when a job applicant failed to allege how the challenged policy disproportionately affects job applicants with a disability more harshly than similar applicants without a disability); *Walker v. Charlotte-Mecklenburg Sch.*, No. 3:09cv35RJC, 2009 WL 3762971, at *3 (W.D.N.C. Nov. 9, 2009), *aff'd,* 366 F. App'x 459 (4th Cir. 2010) (dismissing a disparate-impact claim under the ADEA when a job applicant failed to allege how the challenged policy disproportionately affects older job applicants relative to younger ones).

Therefore, even drawing all reasonable inferences in favor of Harrison, he does not state a cognizable claim against Wells Fargo for disparate impact under Title VII, the ADA, and the ADEA. The Court will grant the Motion for Judgment as to Counts IV, V, and VI.

### D. Count VII: Harrison Does Not State a § 1983 Claim Because He Does Not Plausibly Plead that Wells Fargo Acted Under the Color of State Law

In Count VII, Harrison brings a claim against Wells Fargo pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal citation omitted). Private activity, such as that of a non-government owned corporation in its hiring decisions "will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it into state action: [m]ere approval of or acquiescence in the initiatives of a private party is insufficient." *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (internal citations and quotations omitted).

Liberally reading the Complaint, Harrison does not allege any facts showing that Wells Fargo acted under color of state law or that the state dominated its activity to the extent that

15

Wells Fargo actions became attributable to the state. *See* 42 U.S.C. § 1983; *Trani*, 191 F.3d at 507. Accordingly, Harrison fails to state a claim under § 1983 and the Court will grant the Motion for Judgment as to Count VII and dismiss that claim with prejudice.

### E. Count VIII: Harrison Does Not State a FLSA Claim Because Wells Fargo Never Employed Him

The Court will grant the Motion for Judgment as to Count VIII. Harrison brings Count VIII pursuant to FLSA §§ 206, 207, and 215, asserting that Wells Fargo's "willful failure and refusal to hire Harrison because of age, race[,] and disability" violated the FLSA. (Compl. ¶ 11.) Harrison however, cannot assert a violation of the FLSA against Wells Fargo because Wells Fargo never employed him.

In the FLSA, Congress chose to define "employee" as "any individual employed by an employer." *See* 29 U.S.C. § 203(e)(1). The FLSA thus conditions liability on the existence of an employer-employee relationship. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (defining employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee") (quoting 29 U.S.C. § 203(d)).

Here, under a plain reading of the FLSA, Wells Fargo never employed Harrison because it rescinded his job offer after conducting a background check before he started working for the bank. (*See* Compl. ¶ 8.) The Complaint, even drawing all inferences in favor of Harrison, shows only that Harrison was a job applicant, and as such, cannot state a claim under the FLSA. *See Dellinger v. Sci. Applications Int'l Corp.*, No. 1:10cv25, 2010 WL 1375263, at *4 (E.D. Va. Apr. 2, 2010), *aff'd,* 649 F.3d 226 (4th Cir. 2011) (holding that "a job applicant cannot be considered an 'employee'" under a plain reading of the FLSA); *Glover v. City of N. Charleston, S.C.*, 942 F. Supp. 243, 247 (D.S.C. 1996) (finding FLSA anti-retaliation provision did not extend to

16

plaintiffs because they were "job applicants with no prior employment relationship with the [employer]").

Even reading the Complaint liberally, Harrison cannot state a FLSA claim against Wells Fargo because he was never an "employee" of the bank. 29 U.S.C. § 203(e)(1). The Court will grant the Motion for Judgment as to Count VIII and dismiss that claim with prejudice.

### 6. Count IX: Harrison Does Not State an ADA Retaliation Claim Because He Does Not Plead Facts Showing Causation

Harrison does not assert a plausible retaliation claim pursuant to the ADA because he cannot show that Wells Fargo took an adverse action against him because of protected activity.[7]

"In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect [allegations] of retaliation, or proceed under a burden-shifting method." *Jacobs v. N. C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001)). "The elements of an ADA retaliation claim mirror the elements of [a] Title VII retaliation claim." *Jones v. HCA (Hosp. Corp. of Am.)*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014). To establish a *prima facie* case of ADA retaliation, "Plaintiffs must allege (1) that they engaged in protected conduct; (2) suffered an adverse action[;] and (3) that a causal link exists between the protected conduct and the adverse action." *Id.* (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011)). "[T]he decisionmaker's knowledge of the protected activity is essential to a retaliation claim." *Id.* Furthermore, to show a causal link, a plaintiff must, at a minimum, "show that the adverse employment action took place after the protected activity and because of the protected activity." *Byers v. HSBC Fin. Corp.*, 416 F.

---

[7] In the introductory paragraph of his Complaint, Plaintiff states in passing that Wells Fargo violated "Title V" of the ADA. (*See* Compl. 1.) Title V of the ADA contains a prohibition against retaliation and coercion. *See* 42 U.S.C. § 12203(a).

17

Supp. 2d 424, 438 (E.D. Va. 2006) (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002); *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)).

Here, although Harrison satisfies the first two prongs of an ADA retaliation claim, he falters at the third prong: causation. Harrison plausibly alleges that he "suffered an adverse action" when Wells Fargo revoked his offer of employment. *Jones*, 16 F. Supp. 3d at 635. Reading his Complaint liberally, Harrison alleges the EEOC sent him a Right to Sue letter, showing that he filed a Charge of Discrimination and engaged in a "protected activity." *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 461 (E.D. Va. 2018), *aff'd,* 738 F. App'x 169 (4th Cir. 2018) ("The filing of an EEOC charge of discrimination or a lawsuit are quintessentially protected activity."). This satisfies the first two prongs of an ADA retaliation analysis.

But Harrison cannot show causation, the third prong needed to state an ADA retaliation claim, because he does not plead facts showing that Wells Fargo had "knowledge of the [Charge of Discrimination]" when it revoked Harrison's offer of employment. *Jones*, 16 F. Supp. 3d at 635. Even liberally reading Harrison's Complaint, it appears as if Harrison filed the Charge of Discrimination *after* Wells Fargo revoked his job offer. Wells Fargo's "adverse employment action" thus preceded any "protected activity" and cannot plausibly have occurred "because of the protected activity." *Byers*, 416 F. Supp. 2d at 438 (citing *Thompson*, 312 F.3d at 651).

Because Harrison's protected activity occurred after Wells Fargo revoked its job offer, Harrison cannot state a claim for ADA retaliation against Wells Fargo. The Court will grant the Motion for Judgment as to Count IX.

## VI. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Wells Fargo's Motion for Judgment on the Pleadings. The Court will dismiss without prejudice Counts IV, V, VI, and IX of the Complaint. To the extent that Harrison asserts a claim under § 1983, or a claim under the FLSA in Counts VII and VIII, the Court will dismiss those claims with prejudice. Counts I through III remain. The Court will deny Harrison's Motion to Strike. (ECF No. 24.)

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Date: March 9, 2021
Richmond, Virginia